# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-01723-COA

**UNGARINO & MALDONADO LLC F/K/A UNGARINO & ECKERT LLC**  APPELLANT

**v.**

**ECKERT & TARLETON LLC**  APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 11/08/2018 |
| TRIAL JUDGE: | HON. JENNIFER T. SCHLOEGEL |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | JAMES ARISTIDE HOLMES |
| ATTORNEY FOR APPELLEE: | WILLIAM HARRY ECKERT |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 12/10/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., GREENLEE AND LAWRENCE, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1. Ungarino & Maldonado LLC appeals the chancellor's denial of its motion to compel arbitration and to stay proceedings pending arbitration. The chancellor found Ungarino & Maldonado waived its right to arbitrate because the law firm actively participated in a buy-out arbitration regarding attorney William Eckert's departure from the firm, and it never raised the subject of the current dispute—its entitlement to legal fees for a case Eckert handled while at the firm and settled after his departure. The chancellor found this failure was "conduct inconsistent with timely enforcement of the arbitration agreement" and constituted waiver.

¶2.     This Court finds the chancellor's decision to deny arbitration was proper, but the propriety is not due to waiver. Although Ungarino & Eckert's operating agreement contained a binding arbitration clause, the client-fee dispute at issue in this case does not fall within the scope of the agreement. Therefore, it was not proper to mandate arbitration to resolve this dispute. Accordingly, we affirm the chancellor's decision, albeit on different grounds.

## STATEMENT OF FACTS

¶3.     This case arises from a client-fee dispute on a personal-injury case and the attorney who worked on the case's departure from the firm. In November 2015, Nelda Polk retained the law firm of Ungarino & Eckert LLC to represent her in a claim related to an automobile accident in Bay St. Louis, Mississippi. She signed a lawyer-client agreement with a contingency-fee arrangement. William Eckert, an attorney, who at the time was a member of Ungarino & Eckert, handled her case. In January 2017, however, Eckert and another attorney, Michael Tarleton, suddenly left the firm and formed their own law firm—Eckert & Tarleton LLC. As a result, Ungarino & Eckert changed its name to Ungarino & Maldonado LLC. Polk chose to move her case to Eckert & Tarleton, and she signed a separate contingency-fee agreement with that firm.

¶4.     In March 2017, a few months after leaving their former firm, William Eckert and Michael Tarleton individually demanded Ungarino & Maldonado participate in arbitration to determine their buy-out amount as former members of the firm under Section 9.8 of the

former firm's operating agreement.[1]  At some point in 2017, the buy-out matter was arbitrated—no further information about the proceeding is in the record.  Ungarino & Maldonado claims the division of the Polk legal fees was not discussed during the arbitration because it was still ongoing.  Eckert & Tarleton, however, disagrees, claiming prior to the arbitration Ungarino & Maldonado asserted as a defense that the buy-out should be diminished by the Polk contingency fee.

¶5.    In April 2017, Ungarino & Maldonado inquired of Eckert about reimbursement of his hourly attorney fees owed on the Polk matter.  The firm claimed its billing system showed it was owed $15,689.99 for time and expenses related to the Polk file, and there was no retainer.  Eckert, however, disputed the hourly rate Ungarino & Maldonado charged, finding it higher than the firm's past custom and practice for plaintiff files.

¶6.    In January 2018, Eckert negotiated a settlement in the Polk matter for an undisclosed amount.  The next month, Eckert forwarded Ungarino & Maldonado a check for $9,397.66 for "full and final payment" of the fees and costs due to Ungarino & Maldonado associated with the Polk file.  The amount reflected a billing rate of $185 for attorneys and $85 for paralegals for 113.15 hours on the Polk matter, plus costs, less ownership percentages of Eckert and Tarleton.  Ungarino & Maldonado, however, returned the check, disagreeing with Eckert's calculations and stating the hourly rate for Ungarino & Maldonado's attorneys was $250, not $185. Further, Ungarino & Maldonado requested information about the terms

---

[1] Eckert signed an operating agreement with Ungarino & Eckert in December 1999. When Tarleton was made an equity partner at Ungarino & Eckert, he signed an amendment to the operating agreement in January 2008.

of the Polk settlement and related documentation. Ungarino & Maldonado stated that once this information was received, it would then calculate the fees the firm should receive, plus expenses, before calculating the equity percentage owed to Eckert & Tarleton.

¶7. On March 15, 2018, Eckert & Tarleton filed a complaint in the Harrison County Chancery Court and requested a declaratory judgment determining the legal fees from Polk's personal-injury lawsuit. The basis of the declaratory action was how to split the contingency fee between Eckert & Tarleton and Ungarino & Maldonado. Eckert claimed that while at Ungarino & Eckert, he tracked his time on the Polk file through the firm's internal billing system to evaluate the file's economic value and to verify time spent on it. Eckert had received periodic "pre-bills" showing an hourly rate of $250 for attorneys and $125 for paralegals. He found the rate inconsistent with the average billing rate of Ungarino & Eckert and previous billing rates for "plaintiff files." Eckert claimed that while at Ungarino & Eckert, he advised the firm of this discrepancy, but it was never corrected. Ungarino & Maldonado denied Eckert's allegation.

¶8. On March 24, 2018, Ungarino & Maldonado requested the fee dispute be arbitrated. When Eckert & Tarleton did not respond, Ungarino & Maldonado filed a motion to compel arbitration and stay proceedings. In the motion, Ungarino & Maldonado stated the dispute involved only the time and expenses incurred by the firm's attorneys and staff when Ungarino & Eckert handled Polk's claim from November 15, 2015, through late January 2017. Ungarino & Maldonado contended the fee fell within Section 9.8 of the former firm's amended operating agreement, which both attorneys had signed. Section 9.8 provides:

4

> Jurisdiction and Venue. Any suit involving *any dispute or matter* arising under this Agreement may only be resolved by binding arbitration, without the ability to appeal, with Mediation & Arbitration Professionals, and if said company is not in existence, then any other arbitration company authorized from time to time by the Management Committee. All Members hereby consent to binding Arbitration as their sole remedy to conflicts with respect to any such proceeding.

(Emphasis added). Further, Ungarino & Maldonado noted the preference for arbitration under Mississippi law when one party demands it. Eckert & Tarleton responded to Ungarino & Maldonado's motion by arguing the fee dispute did not fall within the scope of the operating agreement. After a hearing, the chancellor entered a judgment in favor of Eckert & Tarleton, which Ungarino & Maldonado appealed.

## DISCUSSION

¶9. Ungarino & Maldonado raises two issues: (1) the chancellor erred in finding it waived the right to arbitrate; and (2) the chancellor should have granted its motion to compel arbitration because there was a valid arbitration agreement, the dispute fell within the scope of the agreement, and there were no grounds for revocation of the arbitration clause. The appellate court "reviews the grant or denial of a motion to compel arbitration de novo." *Nutt v. Wyatt*, 107 So. 3d 989, 993 (¶10) (Miss. 2013).

### 1. Waiver

¶10. Waiver of the right to arbitrate is not favored in Mississippi; "there is a presumption against it." *Id* at (¶11) (quoting *MS Credit Center Inc. v. Horton*, 926 So. 2d 167, 179 (¶39) (Miss. 2006)). However, a party may waive arbitration by "either [(1)] active participation or substantial invocation of the litigation process which results in detriment or prejudice to

the other party, or [(2)] engaging in conduct inconsistent with timely enforcing the arbitration agreement . . . ." *Id.* at 994 (¶11) (quoting *Century 21 Maselle & Assocs. Inc. v. Smith*, 965 So. 2d 1031, 1036 (¶8) (Miss. 2007)) (emphasis omitted).

¶11. The chancellor found that Ungarino & Maldonado was aware of the fee dispute at the time that the firm was participating in the arbitration to settle William Eckert and Michael Tarleton's departure from the firm, but Ungarino & Maldonado did not raise the issue. By participating in the buy-out arbitration without raising the fee dispute, which was the subject of the declaratory action and the present motion to compel arbitration, Ungarino & Maldonado waived its right to invoke arbitration. The chancellor determined this failure was "conduct inconsistent with the timely enforcement of the arbitration agreement [and] constitutes waiver" under *Century 21* and *Horton*.

¶12. Both parties agree the chancellor cited the proper controlling law of *Century 21* and *Horton* but disagree with the result. The buy-out arbitration, of course, was not litigation. Ungarino & Maldonado claims it purposefully did not discuss the fee dispute during that arbitration because the Polk suit was not concluded. William Eckert and Michael Tarleton disagree, stating the fee dispute was discussed at the prior arbitration in order to diminish their buy-out. Because the initial arbitration is not a part of this record, we cannot confirm this contention; but regardless, waiver is improper.

¶13. On March 15, 2018, Eckert & Tarleton filed its complaint for a declaratory judgment to determine the legal fees owed Ungarino & Maldonado. Ungarino & Maldonado requested arbitration approximately one week later, on March 24, 2018, and filed its motion

to compel arbitration approximately one week after that. These dates show Ungarino & Maldonado did not delay in demanding arbitration and had no other participation in the litigation. Further, Eckert initiated the buy-out arbitration, outlining its scope, which did not specifically include the fee dispute. Even so, the division of the Polk fee could have become a point of contention during the buy-out arbitration, but it was not raised or resolved, in part, because the Polk case had not concluded. The record shows the Polk case was not settled until early 2018 after the buy-out arbitration was concluded. Therefore, the amount of the Polk contingency fee, if any, was unknown when the buy-out arbitration occurred.

¶14. We do not agree that Ungarino & Maldonado's participation in the buy-out arbitration without raising the fee dispute is "conduct inconsistent" with timely enforcement of the arbitration agreement. As will be discussed below, the former firm's operating agreement did not apply to the fee dispute. But even if it did, Ungarino & Maldonado's participation in the buy-out arbitration in no way prejudiced Eckert & Tarleton in the fee-dispute matter. Accordingly, Ungarino & Maldonado did not waive its right to arbitrate by merely participating in an arbitration over a matter different from the fee dispute.

### 2. Operating Agreement

¶15. Next, Ungarino & Maldonado argues that the fee dispute falls within the scope of the operating agreement, and thus Eckert & Tarleton was compelled to arbitrate under Section 9.8. We disagree.

¶16. Ungarino & Maldonado argues Section 9.8's language, "for any dispute or matter arising under this [a]greement," mandates that arbitration is the sole dispute-resolution

process for the fee dispute. Ungarino & Maldonado specifies the fee dispute does not involve the amount Polk received during the settlement but rather the amount due to Ungarino & Maldonado when Eckert worked for Ungarino & Eckert from November 15, 2015, through late January 2017.[2] Without offering more specifics, Ungarino & Maldonado contends that by signing the agreement, the parties agreed to arbitrate any dispute or matter arising under the operating agreement "governing their practice of law." However, Ungarino & Maldonado does not point to a specific provision of the agreement that applies to "fee disputes."

¶17. Eckert & Tarleton responds that the agreement does not apply to the fee dispute because, as a whole, the agreement concerns the internal management of the former Ungarino & Eckert law firm, and is silent regarding fee disputes with former members of the firm. Our examination of the operating agreement reveals that it addresses formation, operation, and management of the firm; financial matters such as capital contributions and distributions, profit, and loss; accounting matters such as record keeping and taxes; transfer of interest and withdrawal of members; and dissolution, liquidation, and termination of the firm.

¶18. There is no mention of fee disputes in general or fee disputes specifically regarding other firms or former members of the firm. Additionally, the agreement does not pertain to the current entities Eckert & Tarleton and Ungarino & Maldonado, but rather Ungarino & Eckert and Eckert, individually, and Tarleton, individually, because the two attorneys signed

---

[2] At the hearing on the motion to compel arbitration, counsel for Eckert stated to the chancellor: "this whole thing is about a $5,000 fee dispute."

8

the agreement in their individual capacities. While the agreement and arbitration clauses are valid, the current dispute does not fall within the scope of the agreement. The only section where monetary issues between former members and the firm is addressed is in Sections 6.2 and 6.3 of the agreement, where a resigning or withdrawing member will be "bought out" by the terms of the agreement. Section 6.2 provides that in the event of a "nonpreferred withdrawal," the withdrawing member is entitled to "the amount of the member's buy-in that has been paid" and sixty-percent of that member's pro-rata share of the cash flow as of the date of the withdrawal. "Cash flow" is defined as all cash funds derived from operations of the firm. Thus, the express language of the agreement applies to current funds and accruals as of the date of the member's nonpreferred withdrawal. The current fee dispute was simply not envisioned by the agreement. It does not apply to future fee disputes in cases where members have withdrawn from the firm, nor does it or mention any entitlement of the firm to a portion of a contingency fee realized by a former member after withdrawal.

¶19. We cannot say, as Ungarino & Maldonado argues, that the fee dispute would fall under the general arbitration provision of Section 9.8 due to the language "[a]ny suit involving *any dispute or matter* arising under this Agreement"; quite simply, the fee dispute between Eckert & Tarleton and Ungarino & Eckert does not arise under the Agreement.

¶20. Accordingly, we affirm the chancellor's decision to deny Ungarino & Maldonado's motion to compel arbitration.

¶21. **AFFIRMED.**

**CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, LAWRENCE AND C. WILSON, JJ., CONCUR. TINDELL AND McDONALD, JJ.,**

9

**CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. McCARTY, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY WESTBROOKS, TINDELL AND McDONALD, JJ.**

**McCARTY, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶22. I agree with the majority that the fee dispute was not within the scope of the agreement. But based on the record I would have also affirmed the trial court's finding that the affirmative defense of arbitration was waived.

¶23. At the root here is the basic idea that we want dispute resolution to be streamlined and efficient—whether the dispute is resolved in a courtroom with a judge or a boardroom with an arbitrator. The focus should be on the speed of resolution. This is why the Supreme Court has determined that waiver constitutes "*either* active participation or substantial invocation of the litigation process which results in detriment or prejudice to the other party, *or* engaging in conduct inconsistent with timely enforcing the arbitration agreement . . . ." *Century 21 Maselle & Assocs. Inc. v. Smith*, 965 So. 2d 1031, 1036 (¶8) (Miss. 2007) (emphasis added). If you slow down the process, or unnecessarily multiply it, you risk waiving the affirmative defense of arbitration.

¶24. There was already one full arbitration over the lawyers leaving the firm, and both sides knew the fee dispute was looming. This is why the trial court held that the law firm "was aware of the fee dispute, but actively participated in an arbitration to settle [the departure issue]," and this "failure to include the present issues in the previous arbitration is conduct inconsistent with the timely enforcement of the arbitration agreement and constitutes a waiver." The point is not that any party was prejudiced by the prior

10

arbitration—it is that the other disputes could have been grouped together and dealt with at that time but were not. We should hew to the principle in *Century 21 Maselle* and affirm the trial court on this issue as well.

¶25. For these reasons, I concur in part and dissent in part.

**WESTBROOKS, TINDELL AND McDONALD, JJ., JOIN THIS OPINION.**